UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Dion Harden, individually and on behalf of
M.H., a minor, *et al.*,

    *Plaintiffs*,

v.

Mead Johnson & Company, LLC,

    *Defendant*.

No. 24 CV 108

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

Defendant Mead Johnson & Company, LLC ("Mead Johnson")[1] manufactures infant formula, including Enfamil-brand Nutramigen Powder. [Dkt. 1 ¶¶ 1–2.] On December 30, 2023, Mead Johnson recalled Nutramigen products sold in the United States because of possible contamination with *Chronobacter sakazakii*, a harmful bacterium. [*Id.* ¶¶ 6–7.] Dion Harden and Jessica Tan filed this putative class action, which Mead Johnson moves to dismiss on several grounds; it also moves to strike the class allegations. [Dkt. 20.] As explained below, the motion to dismiss is denied as to subject-matter jurisdiction but otherwise granted, and the motion to strike is denied.[2]

## I. Background

Mead Johnson & Company, LLC is a leading producer of infant formula. [Dkt. 1 ¶ 2.] It manufactures and sells Enfamil-brand infant formula products including

---

[1] Mead Johnson's only member is Mead Johnson Nutrition Company, a corporation. [Dkt. 1 ¶¶ 13–14.] Plaintiffs properly allege jurisdiction under 28 U.S.C. § 1332(d) [*id.* ¶ 15], and Mead Johnson does not challenge the subject-matter jurisdiction on the basis of diversity of citizenship, so the Court does not refer to the parent company in this order.

[2] Because the Court dismisses the Complaint, it declines to consider appointing interim class counsel at this time, so it denies Plaintiffs' motion [Dkt. 18] without prejudice.

Nutramigen. [*Id.* ¶¶ 2–3, 18.] On August 30, 2023, the Food and Drug Administration sent Mead Johnson a "Warning Letter" explaining that the FDA had inspected its manufacturing facilities in Zeeland, Michigan[3] and Wanamingo, Minnesota and found evidence of "significant violations" of federal regulations. [*Id.* ¶¶ 23–25.] The Zeeland inspection occurred between February 7 and 23, 2023, and the Wanamingo inspection between November 28, 2022 and January 9, 2023. [*Id.* ¶ 24.]

The Warning Letter stated that different Enfamil products manufactured at both facilities tested positive for *Chronobacter sakazakii* ("*C. sakazakii*"), a bacterium that can cause various illnesses and symptoms, including meningitis. [*Id.* ¶¶ 6, 26; *see id.* at 46–48.] The FDA found that Defendant "did not establish a system of process controls … designed to ensure that infant formula does not become adulterated" and "did not ensure that equipment and utensils used … were of appropriate design and were installed to facilitate their intended function and their cleaning and maintenance." [*Id.* ¶ 27.] In a separate incident, the Israeli Ministry of Health found that Nutramigen Powder manufactured at the Zeeland facility tested positive for *C. sakazakii*. [*Id.* ¶ 28.]

On December 30, 2023, Mead Johnson recalled Nutramigen Powder products manufactured in June 2023 and largely distributed between June and August 2023. [*Id.* ¶ 19.] These products had a "use by" date of January 1, 2025. [*Id.*][4] The next day, the FDA announced the recall, stating that the recall was "due to a possibility of

---

[3]     The Complaint erroneously states that Zeeland is in Connecticut. [Dkt. 1 ¶ 24; *cf. id.* at 45, 52–53 (correctly identifying the Zeeland as in Michigan).]

[4]     Elsewhere, the Complaint states that the use by date was January 1, 2024. [Dkt. 1 ¶ 1.] January 1, 2025 is the correct date. [*See id.* at 39.]

contamination with Chronobacter sakazakii in product sampled outside the U.S." [*Id.* ¶¶ 20–21.]

Dion Harden, from Illinois, bought Nutramigen Powder in and after June 2023 for his infant daughter, M.H., and Jessica Tan, from Connecticut, bought Nutramigen Powder in September 2023 for her infant son, L.L. [*See id.* ¶¶ 11–12, 29–32.] Each child became ill after consuming the Nutramigen Powder. Plaintiffs allege that Tan's son was hospitalized and diagnosed with meningitis; they allege only that Harden's son "became ill." [*Id.* ¶¶ 31–32.] Believing that Nutramigen caused their children's illnesses, Harden and Tan filed this lawsuit against Mead Johnson, seeking relief for themselves, their children, and several classes on various legal theories. They ask the Court to appoint their attorneys as interim class counsel. [Dkt. 18.] Mead Johnson moves to dismiss the Complaint on jurisdictional and merits grounds. [Dkt. 20.]

## II.    Legal Standards

Mead Johnson moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject-matter jurisdiction, while a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. In both cases, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff, *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826–27 (7th Cir. 2023), but it need not accept statements of law or conclusory factual allegations as true, *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021). To survive dismissal, "a complaint must state a claim to relief that is plausible on its face." *Page v. Alliant Credit Union*, 52 F.4th 340, 346 (7th Cir. 2022)

(cleaned up). This standard requires plaintiffs to provide "just enough details about the subject matter of the case to present a story that holds together," or "to nudge their claims across the line from conceivable to plausible." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570–71 (7th Cir. 2023) (cleaned up).

A different standard applies to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *See Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020). The Court takes the well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor, but if the defendant submits "affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch. Found. v. Sanofi Synthelabo, S.A.*, 338 F.3d 773, 782–83 (7th Cir. 2003)). Where the Court does not hold an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction, *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 424 (7th Cir. 2010), but this is an evidentiary burden, not a pleading standard. If the plaintiff fails to offer evidence of his own, the presumption flips and the Court "will accept as true any facts in the defendants' affidavits that do not conflict with" evidence introduced by the plaintiff. *Curry*, 949 F.3d at 393; *see also Swanson v. City of Hammond*, 411 F. App'x 913, 915 (7th Cir. 2011) (nonprecedential) (accepting "allegations relating to personal jurisdiction as true except where the defendants refute them through undisputed affidavits" (citations omitted)).

Under Rule 12(f), on motion or on its own, the Court may "strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter," and Rule

23(c)(1)(A) permits the Court to "deny class certification even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). Thus, the Court may strike "facially and inherently deficient" class allegations, but it is seldom appropriate to do so at the pleading stage. *See Robinson v. Lake Ventures LLC*, 2023 WL 5720873, at \*9 (N.D. Ill. Sept. 5, 2023).

### III.    Jurisdiction

#### A.    Subject-Matter Jurisdiction

The Court begins, as it must, with Mead Johnson's challenge to the Court's subject-matter jurisdiction. *Sherwood v. Marchiori*, 76 F.4th 688, 693 (7th Cir. 2023). Mead Johnson moves to dismiss under Rule 12(b)(1), arguing that Plaintiffs lack Article III standing. [Dkt. 21 at 7.] At the pleading stage, a plaintiff must plausibly allege all three elements of standing: "(1) an injury in fact that is (2) fairly traceable to the challenged action of the defendant and (3) is likely, not merely speculative, that the injury will be redressed by a favorable decision." *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528–29 (7th Cir. 2024) (citation omitted). Mead Johnson pursues a facial standing challenge, arguing that Plaintiffs have not plausibly alleged that their personal injuries are fairly traceable to it. *See id.* at 528 ("A facial challenge attacks standing on the pleadings, arguing that the plaintiff lacks standing even if the well-pleaded allegations in the complaint are taken as true." (quotation omitted)). The Court disagrees.[5]

---

[5]    Mead Johnson also argues that Plaintiffs fail to plausibly allege a concrete economic injury in fact. [Dkt. 21 at 10–12.] Plaintiffs have plausibly alleged that their children's personal injuries are fairly traceable to Mead Johnson, so the Court does not reach this issue.

Plaintiffs' theory of standing as to their children's injuries is straightforward. Harden and Tan purchased Nutramigen for their infant children, who consumed it and became ill. [Dkt. 1 ¶¶ 29, 31–32.] Mead Johnson recalled Nutramigen products based on positive test results for *C. sakazakii*. [*Id.* ¶¶ 19–20, 24–28.] Plaintiffs allege that the Nutramigen Powder they purchased was contaminated with *C. sakazakii*. [*Id.* ¶ 30.] These allegations suffice to establish standing at the pleading stage. *Cf. Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("Plaintiffs allege that they are victims of a pyramid scheme that saddled them with financial loss, which YTB caused. The judiciary can redress that injury by ordering YTB to pay money to the victims. Nothing more is required for standing.").

Mead Johnson's contrary view is unpersuasive. It correctly notes that an attenuated chain of causation is insufficient for standing, but the factually distinct cases it cites do not support the conclusion that Plaintiffs lack standing here. [Dkt. 21 at 8–10.] In *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, the injury was not traceable to the defendant, but rather a state court judge's order which the defendant was compelled to follow. 719 F.3d 601, 606–07 (7th Cir. 2011). In *Clapper v. Amnesty International USA*, any future injury the respondents might have been at risk of was not fairly traceable to the statute whose constitutionality the respondents were challenging because the "chain of contingencies" necessary for an injury to occur "show[ed] that respondents cannot satisfy the requirement that any injury in fact must be fairly traceable to [the statute]." 568 U.S. 398, 410–11 (2013). Here, however, Plaintiffs' theory of standing does not depend on third-party conduct or a chain of

6

contingencies. Plaintiffs allege that Mead Johnson's product was contaminated, their children consumed it, and the children became ill as a result. The injury, illness from allegedly tainted baby formula, is fairly traceable to Mead Johnson's conduct, the allegedly negligent production of baby formula.

Mead Johnson argues that Plaintiffs' allegations do not make it plausible that the Nutramigen they bought was, in fact, contaminated or that it caused their children's illnesses. Mead Johnson emphasizes that "the domestic recall involved the 'possibility of contamination'"; that none of the recalled Nutramigen that was tested came back positive for *Chronobacter* or *C. sakazakii*; and that Plaintiffs do not allege that the Nutramigen they bought was subject to the recall. [Dkt. 21 at 8–9 (citations omitted).] "They presume that because *different* products at *different* times were contaminated, there is a causal basis for their claims." [*Id.* at 9 (citations omitted).]

These arguments go to the merits, not standing. True, to prevail, Plaintiffs will have to prove that Mead Johnson caused any injury they suffered, and to survive a motion to dismiss, they must allege facts making their entitlement to relief plausible. *Page*, 52 F.4th at 346. But traceability requires plausible allegations only of a causal connection, not proximate cause. *Pit Row, Inc. v. Costco Wholesale Corp.*, 101 F.4th 493, 502 (7th Cir. 2024). Mead Johnson argues that Plaintiffs' allegations fall short on this front, and the Court addresses those arguments below, but "[t]hat a plaintiff's claim under his preferred legal theory fails has nothing to do with subject-matter jurisdiction unless the claim is so feeble as to be essentially fictitious." *Morrison*, 649 F.3d at 536 (cleaned up). At the minimum, Mead Johnson agrees that Plaintiffs allege

that some Nutramigen was contaminated with *C. sakazakii* and that their children became ill after consuming Nutramigen. Those allegations establish that Plaintiffs' claims are not essentially fictitious. Mead Johnson's motion to dismiss for lack of subject matter jurisdiction is therefore denied.

## B. Personal Jurisdiction

The Court now turns to the motion to dismiss Tan's claims under Rule 12(b)(2) for lack of personal jurisdiction. [Dkt. 21 at 12–14.]

### 1. Governing Law

"A federal court sitting in diversity must rely on the law of personal jurisdiction that governs the courts of general jurisdiction in the state where the court is sitting," here Illinois. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); Fed. R. Civ. P. 4(k)(1)(A). The Illinois long-arm statute "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." *Hyatt*, 302 F.3d at 714 (citation omitted); 735 ILCS 5/2-209(c). Because "[no] party urges that the Illinois due process analysis differs," the Court "only consider[s] the requirements of federal due process." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 n.15 (7th Cir. 2022) (cleaned up). [*See* Dkt. 21 at 13 (agreeing with this point).]

---

[6]     Two further points. First, Mead Johnson does not argue that if the personal injuries confer standing, the Court should nevertheless narrow the scope of the claims because only the children suffered those injuries [*see* Dkt. 21 at 8–10], so the Court has not considered doing so. Second, Mead Johnson's motion does not discuss Plaintiffs' standing with respect to injunctive and declaratory relief, but often, when the alleged problem with a defendant's product comes to light, a plaintiff will lack standing to seek prospective relief because it is not likely that the plaintiff will be injured in the same way again. *See, e.g.*, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014). The Court has an independent obligation to ensure that subject-matter jurisdiction is secure, *see, e.g.*, *Webb v. FINRA, Inc.*, 889 F.3d 853, 856 (7th Cir. 2018), but because it dismisses the Complaint without prejudice, it does not address these unbriefed standing issues now, but they may arise in the future.

8

Fourteenth Amendment's Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (cleaned up). The Clause permits courts to exercise personal jurisdiction over an out-of-state defendant only if it has "sufficient minimum contacts with [the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tamburo v. Dworkin*, 601 F.3d 693, 700–01 (7th Cir. 2010) (cleaned up). Personal jurisdiction may be general or specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014).

General jurisdiction exists "only when a defendant is 'essentially at home' in [a] State"; it "extends to any and all claims brought against a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (cleaned up). A state may exercise general jurisdiction over a corporation if the corporation is incorporated or has its principal place of business there, *id.* at 358–59, and in an "exceptional case," a different state might also be able to exercise general jurisdiction, *see Daimler*, 571 U.S. at 139 n.19. However, "exceptional circumstances are incredibly difficult to establish," *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 898 (5th Cir. 2024) (cleaned up); and no Supreme Court or Seventh Circuit case has identified any such circumstances. Mead Johnson states that "limited liability companies are treated like corporations" for purposes of general jurisdiction [Dkt. 21 at 12 (citation omitted)], but "[t]he Supreme Court has yet to address specifically how to evaluate whether an entity other than a corporation is subject to general jurisdiction." 4 Fed. Prac. & Proc. Civ.

§ 1067.5 (4th ed. June 2024 update) (footnote omitted). But Plaintiffs do not suggest another standard [*see* Dkt. 33 at 10–12], and Mead Johnson's view has some support,[7] so the Court will apply the same test it would for a corporation.

Specific jurisdiction "covers defendants less intimately connected with a State [than general jurisdiction], but only as to a narrower class of claims." *Ford*, 592 U.S. at 359. To establish specific personal jurisdiction over a defendant, the plaintiff must show that "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) [the] exercise of personal jurisdiction … comport[s] with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2020) (citation omitted).

## 2. Application

Mead Johnson argues that the Court has no personal jurisdiction over Tan's claims against it. Mead Johonson is organized under Delaware law, and while it was formerly headquartered in Illinois, it submits a declaration attesting that in 2018 it moved its headquarters from Illinois to Indiana. [Dkt. 21 at 13; *see* Dkt. 21-1 ¶¶ 3–4.] Therefore, Mead Johnson argues that it is subject to general jurisdiction only in

---

[7]      *See, e.g.*, *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 n.10 (5th Cir. 2020) (noting that the Fifth Circuit has applied this test to limited liability companies); Richard D. Freer, *Some Specific Concerns with the New General Jurisdiction*, 15 Nev. L.J. 1161, 1163 n.20 (2015) (noting that the defendant in *Daimler* was a limited liability company, despite the opinion articulating the test as applied to corporations); Susan Gilles & Angela Upchurch, *Finding a "Home" for Unincorporated Entities Post-*Daimler AG v. Bauman, 20 Nev. L.J. 693, 720–25, 728–29 (2020) (arguing for a corporation-like test for limited liability companies).

Delaware and Indiana [Dkt. 21 at 12–13] and that specific personal jurisdiction over Tan's claims does not exist because those claims do not arise out of or relate to Mead Johnson's Illinois-based activities. [*Id.* at 13–14 ("Tan says *nothing* that connects her, her claimed injury, or her claims to Illinois.").]

Plaintiffs agree that Mead Johnson moved its headquarters to Indiana, but they argue that "general personal jurisdiction over Mead Johnson may still exist if Defendant still has continuous and systematic contacts with Illinois." [*Id.* at 12.] And they note that the Complaint alleges that Harden's claims arise out of or relate to Mead Johnson's contacts with Illinois. [*Id.* at 12–14.] Plaintiffs therefore ask the Court to permit jurisdictional discovery before ruling on the Rule 12(b)(2) motion, to determine whether Mead Johnson is subject to general jurisdiction in Illinois and whether Tan's claims arise out of or relate to Mead Johnson's Illinois contacts. [*Id.* at 12–14.]

The Court disagrees that jurisdictional discovery is warranted. The Seventh Circuit cautions that "[a] plaintiff must be able to establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022) (cleaned up). To make out a prima facie case of personal jurisdiction, a plaintiff must plausibly allege or offer evidence of the grounds for jurisdiction and, if the defendant submits evidence contradicting the allegations, the plaintiff must come forward with evidence. *See Curry*, 949 F.3d at 393; *Purdue*, 338 F.3d at 782–83. [Dkt. 34 at 3–4.] Plaintiffs fail to provide allegations or evidence sufficient to establish a prima facie showing of personal jurisdiction.

11

On general jurisdiction, the Complaint alleges that Mead Johnson "has its headquarters in Chicago, Illinois" [Dkt. 1 ¶ 13], which would supports finding general personal jurisdiction. *Ford*, 592 U.S. at 359; *see Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (holding that a corporation's principal place of business is typically its where its headquarters is located). But Mead Johnson provided a sworn declaration stating that its headquarters is in Indiana. [Dkt. 21-1 ¶ 4.] Thus, the Court takes the declaration as true, not the contrary allegation in the Complaint, *see Curry*, 949 F.3d at 393, and Plaintiffs do not offer any evidence of their own on this point. [*Cf.* Dkt. 33 at 11–12.] Nor do Plaintiffs allege or offer evidence that Mead Johnson has such systemic and continuous contacts with Illinois that this is the exceptional case where a defendant is subject to general jurisdiction in a state where it is not organized and does not have its principal place of business. [*See id.*; Dkt. 34 at 3–4 ("Plaintiffs offer nothing about Mead Johnson's corporate activities or scale of operations in Illinois.").] *Pace*, 93 F.4th at 898 (noting the difficulty of meeting the exceptional case standard). With no allegations of systemic and continuous contacts and no evidence to rebut the declaration that Mead Johnson's headquarters are in Indiana, Plaintiffs have failed to make a prima facie showing that Mead Johnson is subject to general jurisdiction in Illinois. *See Curry*, 949 F.3d at 393; *Purdue*, 338 F.3d at 782–83.

On specific jurisdiction, Mead Johnson offers no evidence that Tan's injuries do not arise out of or relate to its Illinois-related activities, so to make out a prima facie case of personal jurisdiction, Plaintiffs need only allege the basis for jurisdiction. *See Curry*, 949 F.3d at 393; *Purdue*, 338 F.3d at 782–83. The allegations they point

to, however, are unrelated to Tan. [Dkt. 33 at 13; *see* Dkt. 1 ¶ 11 (Harden is an Illinois resident), ¶ 17 (Mead Johnson "conducts business in" and "has sold, marketed, and/or distributed contaminated Nutramigen Powder products" in Illinois), ¶ 180 (Harden purchased Nutramigen Powder products in Illinois).] While these allegations satisfy the first prong of the test for specific personal jurisdiction—purposeful availment by the defendant—they do not support an inference that Tan's "alleged injury arises out of or relates to [Mead Johnson's] forum-related activities." *Rogers*, 996 F.3d at 819 (citation omitted). Mead Johnson's ties to Illinois generally or to customers based in Illinois do not help Tan establish a prima facie showing of specific jurisdiction. *See Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 264–65 (2017) ("The State Supreme Court found that specific jurisdiction was present without identifying any adequate link between the State and the nonresidents' claims. … [But t]he mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California … does not allow the State to assert specific jurisdiction over the nonresidents' claims.").

District courts cannot permit jurisdictional discovery unless a plaintiff makes a prima facie showing that there is personal jurisdiction over the defendant. *Sheehan*, 48 F.4th at 526. Plaintiffs have failed to make that showing as to Tan's claims against Mead Johnson, so the Court declines to permit jurisdictional discovery and grants the Rule 12(b)(2) motion to dismiss Tan's claims for lack of personal jurisdiction.

## IV. Failure to State a Claim

The Court now turns to Mead Johnson's arguments for dismissal for failure to state a claim under Rule 12(b)(6). Because the Court dismisses Tan's claims for lack of personal jurisdiction, this section applies only to Harden's claims. Mead Johnson

makes two arguments: (1) the Complaint fails to plausibly allege that Nutramigen caused the injuries to Harden or his daughter, and (2) Harden's breach of warranty claim fails because he did not give Mead Johnson pre-suit notice. [Dkt. 21 at 15–17.]

## A.    Causation

Mead Johnson argues that Harden's allegations do not support a plausible inference that contaminated Nutramigen caused his daughter's illness. [Dkt. 21 at 15–16.] The Court agrees that gaps in the Complaint's allegations mean that Harden has not currently stated a plausible claim.

Mead Johnson asserts that "[t]he entire crux" of Harden's theory rests on "two tenuous assumptions," what it characterizes as a *post hoc, ergo propter hoc*-style argument. [Dkt. 21 at 15; Dkt. 34 at 1.] Those assumptions are that "because of FDA inspections in late 2022 and early 2023 that found *other* Enfamil products (not Nutramigen) were contaminated with *C. sakazakii*, Nutramigen produced months later must have also been contaminated" and that "Nutramigen testing positive for *C. sakazakii* abroad means domestic Nutramigen also was contaminated. Plaintiffs then surmise their Nutramigen must have been contaminated too." [Dkt. 21 at 15.]

Mead Johnson argues that these assumptions do not support an inference that the Nutramigen Harden purchased was tainted. As to the FDA inspections, it notes that the inspections occurred months before the Nutramigen was manufactured and found *C. sakazakii* in products other than Nutramigen. [*Id.*] As to the positive tests from Israel, Mead Johnson notes that its recall notice stated that the Nutramigen went through "extensive testing … and tested negative for" *C. sakazakii*. [*Id.*; *see* Dkt. 1 at 39.] Further, the Complaint does not contain allegations about Nutramigen in

the United States being contaminated. [Dkt. 21 at 15.] Mead Johnson contends that these allegations are insufficient to survive a motion to dismiss. [*Id.* at 15–16.] *See Russell*, 82 F.4th at 570–71 (noting that a complaint's allegations must cross the line between conceivable and plausible).

The Court disagrees to an extent. In ruling on a motion to dismiss, the Court must "read[ ] the allegations sensibly and as a whole," *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013), and draw inferences in favor of the plaintiff, *Reardon*, 74 F.4th at 826–27. Mead Johnson is correct that the FDA tests that detected contaminated infant formula powder occurred months before the Nutramigen at issue here was produced, but the Warning Letter, issued in late August 2023, found Mead Johnson's efforts to remedy the conditions in its factories inadequate.[8] Based on these findings by the FDA, it is reasonable to infer that the conditions that led to the positive tests for *C. sakazakii* in late 2022 and early 2023 continued into the summer of 2023, when Mead Johson produced the allegedly contaminated Nutramigen. The positive tests for *C. sakazakii* in Nutramigen manufactured at the Zeeland facility and exported to Israel supports the inference that the conditions that caused contamination of other Enfamil products also affected Nutramigen.

Mead Johnson's statements that the recalled Nutramigen tested negative for *C. sakazakii* to "extensive testing"; that Mead Johnson "believed that much, if not all,

---

[8]     For example, the FDA stated about Zeeland: "[Y]our firm did not perform genetic characterization (e.g., WGS) of the product isolate and recent environmental isolates from your facility; therefore, it is not clear how you determined that *C. sakazakii* and activities within your own facility could not be responsible for the contamination event. Moreover, you did not provide adequate data to demonstrate that this approach (a product flush) is sufficient to mitigate microbiological contamination from your system." [Dkt. 1 at 46.]

15

of the products recalled … ha[d already] been consumed"; and that there had been "no reports of illnesses or adverse events to date" [Dkt. 1 at 39] are not dispositive. [*Contra* Dkt. 21 at 15.] Because the Court construes the Complaint in Harden's favor, *Reardon*, 74 F.4th at 826–27, it cannot take Mead Johnson's statements as gospel. The statements in the recall notice may not have been complete or correct, and as the Court has explained, other allegations support an inference that the contamination detected in other products also affected the recalled Nutramigen.

Although the Complaint pleads many of the facts necessary to state a plausible claim, there are gaps. It would be irrelevant that Nutramigen tested positive in Israel if the Nutramigen that Harden bought was also manufactured in Zeeland during the relevant time period. But the Complaint does not contain that allegation. [*Compare* Dkt. 1 ¶ 28 ("On information and belief, the Nutramigen Powder products [that tested positive for *C. sakazakii* in Israel] were manufactured at [Mead Johnson's] Zeeland facility."), *with id.* ¶¶ 29–30 (alleging that Plaintiffs purchased tainted Nutramigen, but not that it came from Zeeland).] Nor does the Complaint allege that the Nutramigen Harden bought contained a January 1, 2025 use by date. [*Id.* ¶¶ 29–30.]

Another gap concerns Harden's daughter's illness. The Complaint alleges that Tan's son contracted meningitis, a disease linked to *C. sakazakii* [*id.* ¶¶ 6, 32], but it merely alleges that Harden's daughter "became ill" after consuming Nutramigen. [*Id.* ¶ 31.] The Court agrees that this vague allegation "does not plausibly connect *C. sakazakii* contamination to [Harden's child's] injuries." [Dkt. 21 at 16 ("No allegation suggests a chain of causation—no timeline, no details about the injury, not even a

simple claim that the Nutramigen caused the illness.").] The Court has explained that the facts alleged make it plausible that there was *C. sakazakii* contamination Mead Johnson's facilities, but it is also necessary to plausibly allege that the injury suffered was caused by *C. sakazakii*. The Complaint does not currently do that, but it may be possible to fill this gap in an amended complaint.[9]

At an abstract level, the Court agrees with Harden that the Complaint's basic theory is viable, but the gaps the Court has identified fail to move the claims across the line between conceivable and plausible. *Russell*, 82 F.4th at 570–71. The Court will therefore dismiss the Complaint on causation grounds.

### B. Pre-Suit Notice

Mead Johnson also argues that Harden's failure to give Mead Johnson pre-suit notice defeats his breach of warranty claim. [Dkt. 21 at 16–17.] Harden responds that his claim falls into two exceptions to the pre-suit notice requirement: first, Mead Johnson was already on notice of the defect because it issued the recall and, second, Harden is exempt from the pre-suit notice requirement because he alleges personal injury. [Dkt. 33 at 16–17.] *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 589–91 (Ill. 1996). Mead Johnson counters that the first exception only applies when

---

[9]     Plaintiffs barely attempt to show that Harden's daughter's injury is indicative of *C. sakazakii* exposure, as they focus more on Tan's son's meningitis diagnosis. [*See* Dkt. 33 at 15–16 ("The fact that both children consumed the product and then became ill, and L.L. developed meningitis which can be caused by Cronobacter bacteria, demonstrates a plausible connection between the product and their injuries.").] The Court does not consider whether the allegations in the Complaint would be sufficient as to Tan, as the Court lacks personal jurisdiction over her claims against Mead Johnson. The allegations about her are stronger, but some of Mead Johnson's arguments, such as the lack of a "timeline" and "details about the injury," may also apply to Tan's claims. [*See* Dkt. 21 at 16.]

the defendant has notice of the buyer's claim, not general defects with the product, and the Complaint does not allege such notice. [Dkt. 34 at 7–8.] *See Connick*, 675 N.E.2d at 590 ("[E]ven if a manufacturer is aware of problems with a particular product line, the notice requirement … is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." (citations omitted)). As to the second exception, Mead Johnson argues that Harden does not allege that he suffered any injury, and he fails to allege that his daughter's injury was caused by contaminated Nutramigen. [Dkt. 34 at 8.]

The Court agrees with Mead Johnson on both grounds, with one caveat. It is correct that Illinois law requires notice of the actual buyer's claim to excuse a lack of pre-suit notice, which the Complaint does not allege. Mead Johnson is also correct that the Complaint does not allege personal injury to Harden himself. And because the Complaint fails to plausibly connect M.H.'s illness to Nutramigen, the Court agrees with Mead Johnson that the warranty claim on behalf of M.H. fails. Harden's breach of warranty claim, on behalf of himself and his daughter, will be dismissed at this time. The caveat is that if Harden can fix the deficiencies regarding causation, the warranty claim to M.H. will be able to proceed.

* * *

For the foregoing reasons, the motion to dismiss for failure to state a claim is granted in full. Because Harden may be able to replead some or all of the claims and the norm is to provide at least one opportunity to amend, *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022), the dismissal is without prejudice.

18

## V.     Motion to Strike

Finally, the Court considers Mead Johnson's motion to strike class allegations. It argues that the three proposed classes lack Article III standing and that differences in class members' injuries and differences in applicable state law mean that common questions will not predominate over individual questions, precluding certification under Rule 23(b)(3). [Dkt. 21 at 18–24.] Since the Court has granted the motion to dismiss, it declines to take a firm position as to the class allegations in the initial Complaint. Mead Johnson raises serious arguments that call into question whether the classes will ultimately be certified, and the Court encourages Plaintiffs to take these arguments into account for any amendment to the Complaint. The Court's preliminary view is that these challenges would be more appropriately addressed at the class certification stage, not on a motion to strike.

On standing, the Court has explained that the allegations that children became ill after consuming contaminated Nutramigen meets the injury in fact requirement. Setting the issue of economic injury aside, if class members or their children suffered physical illness, they have standing. The current would-be class representatives each have children who they allege were physically injured by Nutramigen, so they have standing to pursue their claims on behalf of the classes. The Seventh Circuit has cautioned that "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant," *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (citations omitted); [Dkt. 21 at 18–19], but since there is no Article III problem that applies across the board, the class can later be narrowed, if needed, based on evidence adduced in discovery.

*Cf. Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338–39 (7th Cir. 2023) (noting that class certification decisions must be made based on evidence, no allegations).

Regarding Mead Johnson's points about individualized injuries and differences in governing law, these problems may preclude classwide resolution on all aspects of every claim, but this too appears to be a question better taken up later. When it is not possible to resolve an entire claim on a classwide basis, Rule 23(c)(4) may enable litigating discrete issues as a class, with individual proceedings to follow. *See Bennett v. Dart*, 53 F.4th 419, 420 (7th Cir. 2022) (per curiam); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013). Relatedly, once they know more about who is in the class and which states' law applies to their claims, Plaintiffs can decide how best to proceed. States with similar legal requirements might be able to be grouped together in subclasses, and class members in some states or with some types of claims might need to proceed on an individual basis.

Plaintiffs' class allegations do not appear to be so facially deficient that striking them at this early stage is warranted. *See Robinson*, 2023 WL 5720873, at *9. At minimum, the Court is likely to permit at least some class discovery before shutting the door on class certification permanently. The Court emphasizes, however, that its views on these issues are preliminary. If Mead Johnson wishes to renew its motion to strike in the event that Plaintiffs file an amended complaint, it may do so.

## VI. Conclusion

For the foregoing reasons, Mead Johnson's motion to dismiss for lack of subject-matter jurisdiction is denied; its motion to dismiss Tan's claims for lack of personal jurisdiction is granted; and its motion to dismiss for failure to state a claim is granted

as to Harden's claims, which are dismissed without prejudice, and denied as moot as to Tan's claims. Mead Johnson's motion to strike class allegations is denied without prejudice, as is Plaintiffs' motion to appoint interim class counsel.

Because the Court's holding that Mead Johnson is not subject to general jurisdiction in Illinois may impact whether Plaintiffs wish to proceed in this forum,[10] the Court will not set an amendment deadline at this time. Instead, by separate order it will provide the parties a date by which to submit a joint status report proposing next steps.

Enter: 24-cv-108
Date: June 7, 2024

_____
Lindsay C. Jenkins
United States District Judge

---

[10]  *See, e.g.*, Andrew D. Brandt & D. Theodore Rave, *Aggregation on Defendants' Terms:* Bristol-Myers Squibb *and the Federalization of Mass-Tort Litigation*, 59 B.C. L. Rev. 1251, 1287 (2018) ("[I]n federal court, as in state court, if plaintiffs want to bring a multistate class action, most of the time they will likely have to do so in a forum that has general jurisdiction over the defendant ….").